1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Sep 01, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHRISTINA R.,[1]

      Plaintiff,

      v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,[2]

      Defendant.

No. 1:20-CV-03221-ACE

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

**ECF Nos. 16, 20**

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 20. Attorney D. James Tree represents Christina R. (Plaintiff); Special Assistant United States Attorney Frederick Fripps represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the

---

[1]To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits on May 9, 2018, alleging disability since November 1, 2017. Tr. 15, 75, 176-84. The applications were denied initially and upon reconsideration. Tr. 110-12, 115-17. Administrative Law Judge (ALJ) C. Howard Prinsloo held a hearing on November 21, 2019, Tr. 36-66, and issued an unfavorable decision on December 9, 2019. Tr. 12-35. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on October 6, 2020. Tr. 1-6. The ALJ's December 2019 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on November 30, 2020. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Hum. Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On December 9, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 12-35.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through March 31, 2021, had not engaged in substantial gainful activity since her alleged onset date. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity, degenerative disc disease, a closed tuberosity fracture of the left proximal humerus (left shoulder), and major depressive disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform medium work, but with the following nonexertional limitations:

> [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can occasionally perform overhead reaching. She can perform simple, repetitive tasks that do not involve working with the general public or working with more than a few coworkers in performing tasks cooperatively.

Tr. 20.

At step four, the ALJ found Plaintiff could not perform her past relevant work. Tr. 29.

At step five the ALJ found that, based on the testimony of the vocational expert and considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry worker, kitchen helper, prep cook, marking clerk, ticketer/tagger, and collator operator. Tr. 30.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 31.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ properly evaluated Plaintiff's symptom complaints; and (3) whether the ALJ properly evaluated lay witness statements.  ECF No. 16 at 2.

## DISCUSSION

**A.   Medical opinion evidence**

Plaintiff alleges the ALJ erred by improperly rejecting the medical opinion of Karen Mansfield-Blair, Ph.D.  ECF No. 16 at 5-13.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings. *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may explain how he or she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally

well-supported and consistent with the record.  *Id.*  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The Ninth Circuit recently addressed the issue of whether the new regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.* at 788-89, 792.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* at 790, 792.  Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent.  *Id*. at 792.

*1. Dr. Mansfield-Blair*

On November 17, 2018, Dr. Mansfield-Blair performed a mental health consultative evaluation and provided an opinion of Plaintiff's level of functioning. Tr. 445-50.  Dr. Mansfield-Blair diagnosed Plaintiff with major depressive disorder, recurrent episode, severe by history; and cannabis use disorder, mild, by history.  Tr. 449.  She opined Plaintiff would not have difficulty performing simple and repetitive tasks, but that given her performance on memory tasks and an estimated level of intellectual functioning in the low average to borderline intellectual functioning range, Plaintiff would have difficulty performing detailed and complex tasks, and difficulty performing work activities on a consistent basis without special or additional instruction.  Tr. 449-50.  She opined Plaintiff would have difficulty accepting instructions from supervisors and would have difficulty interacting with coworkers and the public, given Plaintiff's self-reports.  *Id*.  She opined Plaintiff would have difficulty maintaining regular attendance and completing a normal workday/workweek without interruptions from a psychiatric condition, "given self-reported diagnoses as well as documented diagnoses that if validated, fall within the range that would warrant designation as Seriously Mentally Ill (SMI) and require a higher level of treatment."  Tr. 450.  She also opined that Plaintiff would have difficulty dealing with the usual stress encountered in the workplace, "as she exhibited a minimal level of distress tolerance skills during the current interview."  *Id*.  The ALJ found Dr. Mansfield-Blair's opinion unpersuasive.  Tr. 28.

First, the ALJ found Dr. Mansfield-Blair's opinion unpersuasive "beyond ability to perform simple tasks" because Dr. Mansfield-Blair's "opinion is vague as to what level of 'difficulty' [Plaintiff] would have with other areas of performance – i.e., mild, moderate, or extreme, or what workplace circumstances could accommodate [Plaintiff's] 'difficulty.'"  Tr. 28.  Plaintiff contends that the record

as a whole, including Dr. Mansfield-Blair's exam notes and objective findings, show Plaintiff would have more than a mild difficulty in sustaining work activities, particularly with her social limitations; and that Dr. Mansfield-Blair examined Plaintiff on behalf of the state agency, and therefore understood the Regulations regarding disability evaluations.  ECF No. 16 at 11.  Defendant contends the ALJ reasonably found Dr. Mansfield-Blair's assessment Plaintiff would have "difficulty" in different areas too vague to describe actual functional limitations. ECF No. 20 at 15.

The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).  Additionally, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, Dr. Mansfield-Blair opined that while Plaintiff would not have difficulty performing simple and repetitive tasks, Plaintiff would have difficulty in other areas.  Tr. 449-50.  While a limitation to simple repetitive tasks is a discrete and concrete limitation, Dr. Mansfield-Blair indicated Plaintiff would have difficulty in other areas.  Difficulty is not a concrete limitation, and the ALJ was within his discretion to limit the persuasiveness of Dr. Mansfield-Blair's opinion, as she did not provide an explanation of how difficulty in other areas resulted in any functional limitations or the severity of such limitations.

Additionally, while Plaintiff argues Dr. Mansfield-Blair examined Plaintiff on behalf of the state agency, at the initial and reconsideration level the state agency reviewers adopted Dr. Mansfield-Blair's opinion; they found Plaintiff was limited to simple repetitive tasks, and that any additional difficulties caused only moderate limitations and were therefore not disabling.  *See* Tr. 84, 86-88, 101-02, 105-06.  The ALJ reasonably determined Dr. Mansfield-Blair's opinion was

unpersuasive beyond the limitation to simple tasks because the rest of the opinion was vague.

Next, the ALJ found Dr. Mansfield-Blair's opinion was poorly supported because it rests largely on Plaintiff's self-report. The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is, 20 C.F.R. §404.1520c(c)(1), and a medical provider's reliance on a Plaintiff's unsupported self-report is therefore a relevant consideration when determining the persuasiveness of the opinion. Dr. Mansfield-Blair indicated she performed a clinical interview and mental status exam, considered Plaintiff's self-reported symptoms, and reviewed medical records from one appointment. Tr. 445-49. While Dr. Mansfield-Blair discussed the objective evidence she considered when providing her opinion concerning functional limitations, she also explained that her opinion Plaintiff would have difficulty with social interactions and maintaining attendance in a workplace was based on "plaintiff's self-reports" along with "self-reported diagnoses as well as documented diagnoses that if validated, fall within the range that would warrant designation as Seriously Mentally Ill (SMI) and require a higher level of treatment." Tr. 449-50. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600. Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1158. Dr. Mansfield-Blair explained that her opinion was partially based on Plaintiff's self-reported symptoms and diagnoses, and the ALJ's conclusion her opinion was poorly supported on this basis is reasonable.

Finally, the ALJ found Dr. Mansfield-Blair's opinion that Plaintiff would have difficulty dealing with the usual stress encountered in a workplace, due to her level of stress tolerance during the evaluation, was inconsistent with "her typical appearance in medical and mental health appointments." Tr. 29. The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(2). Here, the ALJ noted that while Plaintiff showed some abnormalities upon mental status exam at times, she more often appeared with normal mood and affect, and was generally appropriate with her providers. Tr. 29. The ALJ also explained Plaintiff "demonstrated abilities to use learned coping skills from therapy to moderate her responses to people and manage symptoms," noting that Plaintiff "endured stressful court proceedings and regained custody of her daughter." *Id*. The ALJ acknowledged Plaintiff complained of symptoms in connection with various situational stressors to providers, but "also described how she coped with them and she maintained largely benign mental status in the course of dealing with them." *Id*.

Elsewhere in the decision, the ALJ explained Plaintiff reported overall decrease in depression and daily anxiety with medication. Tr. 22 (citing Tr. 376, 385). The ALJ noted that in February 2018, Plaintiff reported using coping skills to assist in emotional regulation. Tr. 24 (citing Tr. 374). The ALJ also cited records from 2018 and 2019 where Plaintiff reported she was compliant with medication and it was working; she reported she was doing better handling her feelings when she was upset and using her skills to regulate anger and irritability. Tr. 24. (citing Tr. 348, 350, 466, 476). The ALJ noted that in August 2019 Plaintiff reported that she felt "pretty good" about her ability to regulate her mood and reactions with her family. Tr. 25 (citing Tr. 679, 684). The ALJ explained while at times Plaintiff endorsed exacerbation in symptoms due to situational stressors, she did not exhibit severe alteration of mental status or overall worsened

symptoms at these appointments; and that even when complaining of increased symptoms, she had mild to moderate scores on PHQ-9 depression inventory testing. Tr. 25 (citing Tr. 654, 660, 663, 673, 679, 686). The ALJ's finding that Dr. Mansfield-Blair's opinion was unpersuasive because it was inconsistent with her typical appearance in medical and mental health appointments is supported by substantial evidence.

The ALJ also found the opinions of the state agency psychological consultants more persuasive than the opinion of Dr. Mansfield-Blair. Tr. 28. In December 2018, Jan Lewis, Ph.D. reviewed the record and provided an opinion on Plaintiff's level of functioning. Tr. 86-88. Dr. Lewis opined Plaintiff would be able to understand, remember, and carry out simple repetitive tasks. Tr. 87. She opined Plaintiff's ability to sustain concentration, persistence, and pace, and to maintain attendance, work with others, and complete a normal workday and work week were limited by memory deficits and estimated level of intelligence, but that she would still be able to perform these tasks within customary tolerances. *Id*. Dr. Lewis opined Plaintiff should work with a few coworkers and supervisors, and she should avoid intense interaction with the general public due to anger and impulsivity. Tr. 88. She opined Plaintiff would be able to set simple goals and make plans and respond appropriately to small changes in the workplace. *Id*. In April 2019, Eugene Kester, M.D. affirmed Dr. Lewis's opinion. Tr. 99-100. The ALJ found the opinions of Dr. Lewis and Dr. Kester persuasive.

The ALJ explained these opinions were persuasive because they were well supported and consistent with the record as a whole. Tr. 28. The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is. 20 C.F.R. § 404.1520c(c)(1)-(2). Here, the ALJ found the state agency opinions were well supported by "reference to [Plaintiff's]

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

unremarkable clinical presentation and PHQ-9 ratings, and her positive response to a conservative outpatient treatment plan," including coping skills and medication. Tr. 28.  Dr. Kester, for example, supported his opinion by explaining that while Plaintiff reported her symptoms were out of control at the reconsideration level, she was on a mood stabilizer and antidepressant; and PHQ-9 rating in February 2019 indicated only mild depression and her provider observed mood, affect, and other mental status findings as within normal limits.  Tr. 100.  The ALJ also found that the state agency opinions were "generally consistent with the greater record as well" such as "generally benign mental status findings, evidence of improved symptom control with medication and learned coping skills," and "[Plaintiff's] social and custody related activities, as well as her extensive and regular attendance [at] medical and mental-health appointments."  Tr. 28.  The ALJ reasonably found the opinions of Dr. Lewis and Dr. Kester more persuasive than the opinion of Dr. Mansfield-Blair because the opinions were well supported and consistent with the record as a whole.

Even if the medical opinion evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld.  *Burch*, 400 F.3d at 679.  The ALJ's findings concerning the medial opinion evidence are supported by substantial evidence, and Plaintiff is not entitled to remand on this issue.

**B.    Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom testimony.  ECF No. 16 at 13-18.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements.  *Andrews,* 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an

underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21.

*1. Inconsistent with Objective Medical Evidence*

The ALJ found Plaintiff's allegations were not consistent with objective findings. Tr. 21-24. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch,* 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ found imaging did not show marked pathology, noting that there was little evidence of sciatica or radiculopathy. Tr. 21. The ALJ noted an

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

MRI in May 2017 showed diffuse disc bulging at L2 through L4 and a central disc bulge at L4-5, resulting in moderate central canal narrowing; and an x-ray of her lumbar spine in July 2017 showed mild degenerative disc disease at L4-5 and congenital fusion of L5-S1.  Tr. 21 (citing Tr. 451); *see* Tr. 579.  The ALJ also noted that upon physical exam in August 2017, she exhibited normal gait and ability to heel-toe walk, normal range of motion, negative straight-leg raise, and normal strength in the bilateral lower extremities.  Tr. 21 (citing Tr. 507-08).  The ALJ acknowledged findings including slow gait, limited range of motion, and positive straight leg raise in physical therapy in April 2018, but he also noted Plaintiff was pregnant at that time, with a due date the following month.  Tr. 22 (citing Tr. 331-39).  She was discharged from physical therapy due to the pain she was having with treatment in April 2018, but the provider explained she could be referred back after she had her baby if she was still having pain.  Tr. 322.

The ALJ noted Plaintiff fell and injured her left shoulder in July 2018, and imaging at that time showed a non-displaced tuberosity fracture of the left proximal humerus.  Tr. 21.  The ALJ explained, however, that this injury required no surgery and was treated with immobilization, and that there is limited record of additional treatment.  *Id.* (citing Tr. 830-31).  The ALJ noted that at the consultative exam in November 2018, objective findings were generally normal beyond morbid obesity, mild limitation in lumbar movement, limits in left shoulder movement with diffuse tenderness, and mild 4/5 weakness of the left rotator cuff.  Tr. 22.  Plaintiff's gait was observed to be normal and there were no signs of sciatica or radiculopathy.  *Id.* (citing Tr. 454-55).  The ALJ noted the record contains no further physical objective findings after the 2018 consultative exam.  Tr. 22.

The ALJ also found mental status exam findings did not corroborate Plaintiff's allegations.  Tr. 23.  The ALJ acknowledged some abnormal findings,

noting records showed anxious, irritable, or tired affect at times, and that she sometimes spoke rapidly or exhibited circumstantial or tangential thoughts.  Tr. 23 (citing Tr. 370, 468, 470-71, 667).  The ALJ found, however, that Plaintiff more often presented with normal mood and affect, providers typically found her cooperative or open and engaged, she was generally alert and oriented, her attention, concentration, and memory were intact, and judgement and insight were fair, and there were no delusions or psychosis noted.  Tr. 23-24 (citing Tr. 350, 353, 359, 362-63, 367, 370, 374, 377, 382, 386, 466, 480, 485, 487, 489, 495, 500, 539, 545, 665, 673, 779).  The ALJ noted a March 2018 PHQ-9 score showed only mild depression.  Tr. 24 (citing Tr. 367).

The Court must consider the ALJ's decision in the context of "the entire record as a whole," but if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).  Further, where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.  The ALJ reasonably concluded that the objective medical evidence did not support the level of impairment alleged by Plaintiff during the period at issue.

### 2. Conservative/Minimal Treatment

The ALJ discounted Plaintiff's symptom complaints in part because treatment for her back pain and shoulder injury was conservative and minimal.  Tr. 21-22.  Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *See Tommasetti*, 533 F.3d at 1039 (holding the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including

physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ noted Plaintiff engaged in a brief course of physical therapy in 2018, and that treatment consisted of one epidural steroid injection in October 2017, which was prior to her alleged onset date, and otherwise consisted of gabapentin and anti-inflammatory medication, along with use of opiate medication under a pain contract prior to her pregnancy and again in 2018. Tr. 22 (citing Tr. 424, 437, 503). The ALJ noted her shoulder injury did not require surgery and was treated with immobilization; and Plaintiff testified that she wore a sling for her shoulder injury for two months. Tr. 22. At an appointment with an orthopedic specialist in August 2017, the specialist noted she walked "pretty briskly" down the hall without any weakness, and he referred her for a steroid injection at L5-S1. Tr. 508. The specialist also indicated there was "no need for operative treatment at present," gabapentin was appropriate for her pain and, noting her PCP had given her hydrocodone for pain, he indicated they should "try to get her off opiates as soon as possible." *Id*. On this record, the ALJ reasonably discounted Plaintiff's physical pain complaints due to minimal and/or conservative treatment.

*3. Improvement with Treatment*

The ALJ also discounted Plaintiff's symptom claims because records show improvement in mental health symptoms with treatment. Tr. 23-25. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.). Here, the ALJ explained Plaintiff improved with treatment including medication and counseling. Tr. 23-25.

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

The ALJ noted, for example, that in December 2017 and January 2018 Plaintiff endorsed overall decrease in depression and daily anxiety with Zoloft, which she described as "very beneficial." Tr. 22 (citing Tr. 376, 385). In February 2018, Plaintiff reported implementing behavioral therapy coping skills to assist in emotional regulation. Tr. 24 (citing Tr. 374). The ALJ noted Plaintiff's reports in 2018 and 2019 that she was compliant with medication and it was working, along with her report that she was doing better handling her feelings when she was upset and using her skills to regulate anger and irritability. Tr. 24. (citing Tr. 348, 350, 466, 476). In February 2019 she reported medication was working, and denied problematic depression, irritability, or angry outbursts; and in May 2019 she reported good management of depression and anxiety and good sleep. Tr. 24 (citing Tr. 493, 665). The ALJ noted her provider reduced counseling sessions to one time a month in July 2019; and in August 2019 Plaintiff reported that she felt "pretty good" about her ability to regulate her mood and reactions with her family. Tr. 25 (citing Tr. 679, 684). The ALJ noted Plaintiff at times endorsed exacerbation in symptoms due to situational stressors but did not exhibit severe alteration of mental status or overall worsened symptoms; and that even when complaining of increased symptoms, she had mild to moderate scores on PHQ-9 depression inventory testing. Tr. 25 (citing Tr. 654, 660, 663, 673, 679, 686).

The ALJ reasonably discounted Plaintiff's symptom claims because records show improvement in mental health symptoms with treatment.

### 4. Situational Stressors

The ALJ found the record reflects a situational component to Plaintiff's symptoms. Tr. 25. If a claimant suffers from limitations that are transient and result from situational stressors, as opposed to resulting from a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016)

(symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational").  An ALJ may also reasonably find a claimant's symptom testimony less credible where the evidence "squarely support[s]" a finding that the claimant's impairments are attributable to situational stressors rather than impairments.  *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would likely be able to maintain full-time employment but for the 'overwhelming' stress caused by caring for her family members").  However, "because mental health conditions may presumably *cause* strained personal relations or other life stressors, the Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously."  *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in original).

Here, the ALJ found a "situational component to the Plaintiff's symptoms," and that "she may experience exacerbations and distraction from transient situational stressors."  Tr. 25.  The ALJ explained, for example, that at the time of Plaintiff's alleged onset date she reported she was in crisis due to being newly pregnant with unstable housing, and that she later endorsed irritability, depression, and trouble sleeping when she had a newborn.  Tr. 25 (citing Tr. 352, 396).  She later endorsed stress related to child-custody proceedings.  Tr. 25 (citing Tr. 500).  The ALJ noted that in 2019, she reported suicidal ideation and self-cutting related to an argument with an uncle who had moved into an already crowded family home.   Tr. 25 (citing Tr. 688).  The ALJ also found Plaintiff endorsed symptom exacerbation from situational stressors and that "fluctuations in relation to stressors are typical of the relevant period, but overall the [Plaintiff] has shown generally benign mental status and positive response to treatment."  Tr. 23, 25.

Records show significant stressors including eviction and a period of homelessness when she was pregnant in 2017 and early 2018, along with the recent death of a family member and friend in mid-2017. *See, e.g.*, Tr. 382, 385, 396, 399, 402, 413. Plaintiff's increased stress with eviction, pregnancy, and death of a family member and friend may not be caused by Plaintiff's impairments. However, stress from child custody issues, relationship issues with relatives and significant others, and her living arrangements are less clearly separable from Plaintiff's mental impairments. Unlike prior cases in this district, where the record clearly contained evidence that the claimant would have been capable of working but for the presence of a specific situational stressor, here Plaintiff's impairments and situational stressors appear more complex and intertwined. *See Wright*, 2014 WL 3729142, at *5. Additionally, "[t]he Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously." *Brendan*, 2018 WL 3090200, at *7. For example, in 2018 Plaintiff reported she "continued to struggle with multiple stressors in her life which are affecting her mood stability." Tr. 500. However, her providers also determined she should remain on Seroquel and other medications for her mental health symptoms while she was pregnant in 2018, due to an increase in symptoms when she discontinued Seroquel. *See* Tr. 358. Her providers determined the benefits of continuing medication outweighed the risks, and that she should continue mental health medications during her pregnancy.

Records show significant mental health symptoms along with multiple situational stressors. On this record, however, it is not clear Plaintiff would have been capable of working but for the presence of specific situational stressors, or that she experienced only transient situational stressors; her mental health impairments and situational stressors appear more complex and intertwined. While the ALJ erred in discounting Plaintiff's symptoms complaints because there was a

situational component or they were related to transient or situational stressors, any error is harmless, as the ALJ provided other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 5. Activities

The ALJ concluded that Plaintiff's activities were inconsistent with her allegations. Tr. 25. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1520(a). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found evidence of activities inconsistent with Plaintiff's allegations. The ALJ noted that although Plaintiff alleged inability to get along with others, she started a new relationship in the summer of 2018. Tr. 25 (citing Tr. 348). The ALJ found that while she alleged inability to remember appointments or to avoid emotional outbursts, Plaintiff engaged in custody proceedings and regained custody of her daughter during the period at issue. Tr.

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

25 (citing Tr. 485). The ALJ also noted while Plaintiff alleged inability to engage in physical activity and inability to complete tasks, in January 2019 she reported deep cleaning her house daily. Tr. 25 (citing Tr. 487).

While Plaintiff offers a different interpretation of the evidence, the ALJ reasonably found Plaintiff's activities are inconsistent with her claims of disabling limitations. This was a clear and convincing reason, when combined with the other reasons offered, to discount Plaintiff's symptom reports.

### 6. Inconsistent Statements

The ALJ found that the record contains inconsistent statements by Plaintiff, which detract from her self-report of symptoms. Tr. 25-26. An ALJ may consider inconsistent statements by a claimant in assessing her subjective statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Such inconsistencies are reasonable factors for an ALJ to discuss in evaluating the reliability of a claimant's allegations. Here, the ALJ noted Plaintiff testified prior jobs had caused her back pain, but physical therapy records show she reported there was not a specific incident that caused her pain to start. Tr. 25 (citing Tr. 337). The ALJ also noted while Plaintiff reported she stopped working due to impairments, with an alleged onset date of disability November 1, 2017, on November 6, 2017 she reported she began a new job the week before. Tr 26 (citing Tr. 385, 396). The ALJ noted while she reported her last job ended due to outbursts at work, at the consultative exam in 2018 she reported she was let go because she could not keep up with the workflow. Tr. 26 (citing Tr. 452). The ALJ also noted while she reported to the psychological consultative examiner that she heard voices in her head telling her to "do weird stuff," her extensive mental health record shows no evidence or report of audio hallucinations or delusions. Tr. 26. Finally, the ALJ noted that she also told the consultative examiner that she had never used alcohol or any other drugs other than tobacco, but the record reflects her use of marijuana

and diagnosis of mild cannabis use disorder.  Tr. 26 (citing Tr. 387); *see also* Tr. 446, 449, 688, 854.  The ALJ reasonably found that Plaintiff's inconsistent statements detracted from her self-report of symptoms.

The ALJ set forth clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these grounds.

## C.  Lay Witness Statements

Plaintiff contends the ALJ failed to provide germane reasons for rejecting the lay witness statements of Plaintiff's parents.  ECF No. 16 at 18-20.  An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19.  Such testimony cannot be disregarded without comment, and if a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).  An ALJ is not required to articulate how he considered evidence from nonmedical sources using the requirements in the new regulations.  20 C.F.R. § 404.1520c(d).

In undated letters, Plaintiff's parents reported Plaintiff has struggled since she was a child with her mental health issues.  Tr. 280-81.  Her mother reported Plaintiff began cutting herself in her teens and has random outbursts and anxiety attacks.  Tr. 280.  Her father reported he has to remind her to take medication, and she has outbursts in public and difficulty remembering things like brushing her teeth.  He reported she has difficulty with authority figures and was fired from her job at Walmart.  Tr. 281.  He reported she had difficulty with anxiety when around groups of people or in crowds, and also at appointments, and that he handles her

ORDER GRANTING DEFENDANT'S MOTION . . . - 22

money for her.  *Id*.  In a 2018 third-party function report, Plaintiff's father described similar issues and indicated these have been present her entire life.  Tr. 225-33.

The ALJ acknowledged Plaintiff's parents "have undoubtedly witnessed the behavior they describe at times in [Plaintiff's life]," but the ALJ found these statements unpersuasive during the period at issue because the reports were inconsistent with the medical evidence of record, as records showed evidence of improvement rather than worsening; the ALJ also noted that Plaintiff had been able to work at SGA levels despite her impairments.  Tr. 26.  Plaintiff contends that the ALJ failed to give specific reasons germane to each witness, and that any SGA level work was short-lived.  ECF No. 16 at 19-20.  Defendant argues that under the new medical regulations, "the ALJ is 'not required to articulate how [they] consider evidence from nonmedical sources' using the requirements that apply to medical opinions," but that the ALJ nevertheless provided several legitimate reasons for discounting the statements of Plaintiff's parents; and that any error was harmless because the lay witness statements were similar to Plaintiff's properly rejected subjective complaints.  ECF No. 20 at 18-20 (quoting 20 C.F.R. § 404.1520c(d)).

The Court finds the ALJ's analysis of the lay witness statements sufficient. The ALJ discussed the lay witness statements and concluded the statements were inconsistent with medical evidence of record, explaining the evidence of record during the period at issue did not show worsening of Plaintiff's symptoms, "rather it shows her generally stabilizing with medication and counseling."  Tr. 26.  This is an appropriate justification supported by the evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (appropriate to reject lay witness testimony where it is inconsistent with medical evidence).

ORDER GRANTING DEFENDANT'S MOTION . . . - 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

While there is an argument that the ALJ is no longer required to provide reasons that are germane to reject lay witness testimony for claims filed on or after March 27, 2017, as explained in other cases in this district, some courts have found that § 404.1520c(d) "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements." *Caleb H. v. Saul*, 4:20-CV-5006-EFS, 2020 WL 7680556 at *8 (E.D. Wash. Nov. 18, 2020); *Maureen P. v. Kijakazi*, 1:20-CV-03240-MKD, 2022 WL 1843988 at *10 (E.D. Wash. Feb. 23, 2022) (quoting *Joseph M.R. v. Comm'r of Soc. Sec.*, 3:18-CV-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019)). As the ALJ provided articulation of his consideration of lay witness testimony and provided an acceptable reason to discount the statements, it is unnecessary for the Court to decide whether and how the ALJ is required to articulate his consideration of lay witness statements under the new regulations.  Further, Plaintiff's parents' statements are similar to Plaintiff's own subjective complaints, which the ALJ properly discounted with clear and convincing reasons supported by substantial evidence, as discussed *supra*.  Therefore, any error in the ALJ's consideration of the lay witness statements would be harmless.  *See Molina*, 674 F.3d at 1122; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (An ALJ may reject lay witness testimony that essentially reproduces the claimant's discredited testimony).

Plaintiff is not entitled to remand on this issue.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed.  Therefore, **IT IS HEREBY ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

ORDER GRANTING DEFENDANT'S MOTION . . . - 24

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant and the file shall be CLOSED**.

**IT IS SO ORDERED.**

DATED September 1, 2022.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 25